QUINN EMANUEL URQUHART
  OLIVER & HEDGES, LLP
Kevin S. Reed *(admitted pro hac vice)*
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

WOOD CRAPO LLC
Mary Anne Q. Wood #3539
Richard J. Armstrong #7461
60 E. South Temple, Suite 500
Salt Lake City, Utah 84111
Telephone: (801) 366-6060
Facsimile: (801) 366-6061

*Attorneys for Defendants
    AMDS Holdings, LLC and
    MHU Holdings, LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MOUNT HOLLY PARTNERS, LLC; ARES FUNDING, LLC; and MARC JENSON,<br><br>         Plaintiffs,<br><br>v.<br><br>AMDS HOLDINGS, LLC; MHU HOLDINGS, LLC,<br><br>         Defendants. | ***APPEAL OF MEMORANDUM DECISION AND ORDER GRANTING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS***<br><br>Civil No. 2:09-cv-00428-TC-DN<br><br>District Judge Tena Campbell<br><br>Magistrate Judge David Nuffer |

Defendants MHU Holdings, LLC ("MHU") and AMDS Holdings, LLC ("AMDS"), (collectively, "Defendants"), by counsel, respectfully appeal Magistrate Judge David Nuffer's Memorandum Decision and Order Granting in Part Motion for Attorneys Fees and Costs ("Decision"). Defendants note that Plaintiff Mount Holly Partners, LLC, ("MHP"), is in bankruptcy. The bond at issue in this action is not listed as an asset of the estate on the Debtor's statement and schedules. As a result, Defendants assume that the bond is not Debtor's property and that the automatic stay has no effect on this appeal. In any event, if the automatic stay is deemed to apply, this appeal is filed solely as to Plaintiffs Ares Funding, LLC and Marc Jenson and to preserve this appeal to the District Judge.

## INTRODUCTION

Defendants respectfully appeal the Magistrate's Decision based on three errors. First, the Magistrate Judge erred in finding that the language of the Temporary Restraining Order ("TRO") limits Defendants' recovery on the bond to the "cost" of organizing a new sale, as opposed to "costs and damages" as required by Federal Rule of Civil Procedure 65(c).

Second, the Magistrate Judge erred in finding that Defendants' damages from the one week delay of the foreclosure sale were satisfied by Defendants' credit bid. The Magistrate's Decision requires Defendants to pursue the damages associated with the wrongfully issued TRO in a separate deficiency action. Requiring Defendants to recover their damages in a separate action is contrary to the stated purpose of a Rule 65 bond which assures "the enjoined party that it may readily collect damages from the funds posted or the surety provided in the event that it was wrongfully enjoined, without further litigation and without regard to the possible insolvency of the assured."

Lastly, the Magistrate Judge erred in finding that federal law prohibits awarding attorneys' fees from the Rule 65 bond proceeds. The Tenth Circuit has held that in some circumstances a wrongfully enjoined party may recover attorneys' fees. Here, Defendants are entitled to their attorneys' fees under both the jurisdiction and fee shifting provisions of the parties' contract.

For these reasons, Defendants respectfully request that the Court release the full bond amount to Defendants and grant Defendants an award of its attorneys' fees.

## ARGUMENT

### I. DEFENDANTS ARE ENTITLED TO RECOVER THEIR COSTS AND DAMAGES ASSOCIATED WITH RESCHEDULING THE FORECLOSURE SALE

#### a. The Magistrate Judge Erred in Finding that Recovery on the Bond was Limited to "Costs" and not "Costs and Damages" as Required by Federal Rule of Civil Procedure 65(c)

*Federal Rule of Civil Procedure 65(c)* governs damages on an injunction bond. *Rule 65(c)* states in pertinent part: "No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such **costs and damages** as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." (emphasis added) The Fifth Circuit, in *Continuum Co. v. Incepts, Inc.*, 873 F.2d 801 (5th Cir. 1989), provided a generally accepted explanation of the purposes served by requiring security under *Rule 65(c)*:

> (1)[I]t assures the enjoined party that it may readily collect **damages** from the funds posted or the surety provided in the event that it was wrongfully enjoined, without further litigation and without regard to the possible insolvency of the assured, and (2) it provides the plaintiff with notice of the maximum extent of its potential liability, since the amount of the bond "is the limit of the damages the defendant can obtain for a wrongful injunction,

3

provided the plaintiff was acting in good faith." Id. at 803.
(emphasis added)

Here, the Magistrate Judge erred by limiting recovery on the bond to "costs" as opposed to "costs and damages." The Magistrate Judge strictly interpreted the language of the TRO to limit "what can be collected from the bond amount." Specifically, the Magistrate Judge interpreted the language "if Plaintiffs do not prevail in obtaining a preliminary injunction, they must pay Defendants *the costs of organizing a new sale for the property*[]" to limit the recovery on the bond to only the "costs" associated with organizing a new sale of the property.

Given the Court's remarks during both the initial TRO hearing and the subsequent Preliminary injunction hearing, Defendants do not believe that the Court intended to limit recovery on the bond to "costs" in contravention of Rule 65. Indeed, the Court specifically acknowledged that the size of the loan and the interest factor on the note were "valid consideration" with respect to the bond.[1] Moreover, limiting Defendants' recovery to only "costs" would cause a substantial injustice to Defendants. Defendants have certainly suffered "damages" beyond merely the "costs" associated with rescheduling the foreclosure sale. As Plaintiffs themselves argued in their *Memorandum In Support Of Motion For Temporary*

---

1    MS. WOOD: "Your Honor, I think we also have to factor in the fact that we have -- I think it's a $10 million default on this property --
    THE COURT: Right.
    MS. WOOD -- which hasn't been paid for eight to ten months. I think we also have to factor in an interest factor on the note -- on the value of the money tied up in this property.
    THE COURT: Sure. And -- and those are valid considerations. And what I'm also going to be doing is I'm going to put this briefing on a very quick schedule. My only problem is I have a four-day jury trial starting on Monday. But I will hear this on Friday, Ms. McNamee, a week from Friday. I'm going to direct that -- will your client be able to put forward a $20,000 bond?" May 13, 2009 Hearing Transcript at 12-13.

    The Court: "That does leave the issue of money, which is on -- in the coffers of the court, and that was to cover expenses that might have to be incurred." May 22, 2009, Hearing Transcript at 13.

4

*Restraining Order And Preliminary Injunction*, land is unique and there are damages associated with a party being denied peaceable use, enjoyment, and possession of real property.  The plain language of Rule 65, as well as federal case law citied by Defendants in their moving papers entitles Defendants to a "costs and damages" recovery from the bond proceeds.

>    b. **The Magistrate Judge Erred in his Determination that Defendants' Damages Resulting from the One Week Delay in the Foreclosure Sale Were Addressed by Defendants' Credit Bid at the Subsequent Foreclosure Sale**

As noted above, one of the damages suffered by Defendants was the loss of the peaceable use, enjoyment, and possession of the Saddleback property for the seven days Defendants were wrongfully enjoined.   This potential damage was certainly known by the parties and the Court at the time the TRO was issued.   In their moving papers, Defendants argued that the best measure of damages for the loss of the peaceable use, enjoyment, and possession of the Saddleback property for the seven days, is either the interest and penalties on the Saddleback loan itself, or alternatively, AMDS's cost of funds on the monies invested to purchase the loan.

The Magistrate Judge determined that Defendants were not entitled to damages from the loss of the peaceable use, enjoyment, and possession of the Saddleback property for two reasons.   First, the Magistrate Judge held that "interest is not mentioned in the language of the TRO Order."   Decision at 8.   Second, the Magistrate Judge determined that Defendants' damages from the loss of use, enjoyment and possession of the Saddleback property were properly addressed at the time of the foreclosure sale.   Specifically, the Magistrate Judge found that "Defendants purchased the property at the rescheduled sale pursuant to a credit bid, where Defendants has the opportunity to include in the purchase price any interest and default penalties

which accrued during the period of restraint. Defendants controlled the amount they paid on their debt in their credit bid for the property." *Id*. at 9.

The Magistrate Judge erred in addressing this issue for two reasons. First, as noted above, Defendants are automatically presumed to be entitled to their damages under Rule 65. Second, and more importantly, the Magistrate Judge's determination that Defendants' damages were addressed by their credit bid at the foreclosure sale is contrary to the stated purpose of a Rule 65 bond, which assures "the enjoined party that it may readily collect damages from the funds posted or the surety provided in the event that it was wrongfully enjoined, without further litigation and without regard to the possible insolvency of the assured." *See* supra, *Coyne-Delany Co., Inc.*

According to the Magistrate's Decision, Defendants controlled the amount of their damages by the amount they credit bid on the property. Defendants' credit bid, however, was substantially lower than the total outstanding balance on the Saddleback loan default. Consequently, in order to recover damages on the interest and penalties associated with the one week delay, Defendants are required to pursue the damages directly resulting from the wrongful TRO through a deficiency action. This action would certainly involve substantial additional litigation, which would result in additional costs and attorneys' fees for Defendants. Moreover, Plaintiff MHP's recent bankruptcy filing certainly implicates "the possible insolvency of the assured." Requiring Defendants to pursue a deficiency judgment from a potentially insolvent party in order to recover damages directly associated with the wrongful TRO is contrary to Rule 65 and federal case law. Defendants are entitled to recover their damages from the bond proceeds.

## II. DEFENDANTS ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FOR WORK PERFORMED IN DISSOLVING PLAINTIFFS' WRONGFUL TRO.

The Magistrate Judge also erred in failing to address Tenth Circuit precedent recognizing that in certain circumstances a wrongfully enjoined party may recover attorneys' fees from the bond proceeds. Contrary to the Magistrate's Decision, Defendants' claim for attorneys fees did not rest solely on Utah Rule of Civil Procedure 65. As Defendants noted in their moving papers, the Tenth Circuit in *Lueker v. First Nat'l Bank*, 82 F.3d 334, 337-338 (10th Cir. 1996), held that in certain circumstances "a party with standing to dissolve a wrongful injunction may also recover attorneys' fees." *Id.*

In this case, Defendants are entitled to attorneys' fees for several reasons. First, the parties' contract specifically calls for the application of "Utah law." *Operating Agreement of Mount Holly Partners, LLC*, ("Operating Agreement"), at § 9.14 ("Utah law . . . governs the construction and application of the terms of this agreement"). Utah law provides for an award of attorneys' fees if provided for in the contract of the parties, *Utah Code §* 78B-5-826, or where an action was not asserted in good faith, *Utah Code §* 78B-5-825.

Second, Defendants are entitled to their attorneys' fees under the Operating Agreement's fee shifting provision. The Operating Agreement expressly calls for an award of attorneys' fees not just for the prevailing party in the ultimate arbitration, but also for an award of attorneys' fees for any "mediation, <u>court action</u> or other <u>adjudicative proceeding</u> arising out of or relating to this Agreement." Operating Agreement, § 9.22(b) (emphasis added). Section 9.22(b) provides that the prevailing party "shall be reimbursed by the party or parties who do not

prevail for the reasonable attorneys, accountants and expert fees and related expenses and for the costs of such proceeding." Here, Plaintiffs' wrongful TRO was removed and Plaintiffs' request for preliminary injunction was denied. Plaintiffs have since dismissed their case in this Court. This case is therefore fully resolved. Under the Operating Agreement, Defendants are entitled to their attorneys' fees.

Lastly, Defendants' claim for attorneys' fees is justified because Plaintiffs have wrongfully multiplied the proceedings in this matter. To date, Plaintiffs have filed identical claims before the AAA panel; an amended complaint in this action; a nearly identical action in Idaho state court; an amended action in Idaho federal court; multiple *Lis Pendens* against the Jenson Property in Idaho; and most recently, a federal bankruptcy action in Utah. It is evident that Plaintiffs are desperately trying to avoid litigating their claims before the AAA panel. At every turn, Plaintiffs' arguments have been rejected by the Court. Defendants should not be forced to bear the costs and fees associated with continual re-litigation of the same issues.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court release the full bond amount to Defendants and grant Defendants an award of their costs, damages and attorneys' fees incurred in resisting the Preliminary Injunction and dissolving the Temporary Restraining Order.

DATED this 24th day of August, 2009.

        WOOD CRAPO LLC

        By      s/Mary Anne Q. Wood
        60 E. South Temple, Suite 500
        Salt Lake City, Utah 84111
        Telephone: (801) 366-6060

        QUINN EMANUEL URQUHART
        OLIVER &HEDGES, LLP
        Kevin Reed
        Nicholas J. Calamari
        Michael Longyear
        51 Madison Avenue, 22nd Floor
        New York, New York 10010-1601
        (212) 849-7000
            *Attorneys for Defendants AMDS Holdings,*
            *LLC and MHU Holdings, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 24, 2009, I electronically filed the foregoing *APPEAL OF MEMORANDUM DECISION AND ORDER GRANTING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS* with the Clerk of Court using the CM/ECF system which sent notification of such filing to the following:

>Mark F. James, Esq.
>Phillip J. Russell, Esq.
>Hatch, James & Dodge, P.C.
>10 West Broadway, Suite 400
>Salt Lake City, UT 84101

DATED this 24th day of August, 2009.

s/Mary Anne Q. Wood